IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THOMAS MANDEVILLE,

                            Plaintiff,

     v.

CLINITY TALENT, LLC and ROBERT PALERMO,

                       Defendants.

OPINION and ORDER

25-cv-104-jdp

---

The court granted summary judgment to plaintiff Thomas Mandeville and awarded him damages in the amount of $169,227, because the undisputed facts showed that defendants Clinity Talent, LLC and Robert Palermo breached his employment contract and violated Wis. Stat. § 103.455 by withholding the commissions Mandeville earned before he was fired. Mandeville asserted that there was one claim left to address after the court's summary judgment order: Count IV of his second amended complaint, which asserted violations under Chapter 109 of the Wisconsin Statutes. The court ordered Mandeville to show cause why the court should not enter judgment and close this case.

Chapter 109 provides an "employee" with a right of action against his former employer to recover any unpaid wages, including his commissions. Wis. Stat. 109.03(5). The question is whether Mandeville is an "employee" under Chapter 109.

The rules for statutory interpretation under Wisconsin law are consistent with the rules under federal law. The court begins with the text, giving the statutory language its "common, ordinary, and accepted meaning." *State ex rel. Kalal v. Cir. Ct. for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Wisconsin courts interpret statutory language in the context in which it is used, considering it in relation to the language of surrounding or closely

related statutes. *Id.*, ¶ 46. Wisconsin courts also consider any statutory purpose ascertainable from the text itself. *Id.*, ¶ 48. When the meaning of statutory language is unambiguous, the interpretive inquiry ends, and courts apply the statute according to its plain meaning. *Id.*, ¶ 46.

The pertinent statute is Wis. Stat. § 109.01(1r), which defines the term "employee." The statutory section provides:

> "Employee" means any person employed by an employer, except that "employee" does not include an officer or director of a corporation, a member or manager of a limited liability company, a partner of a partnership or a joint venture, the owner of a sole proprietorship, an independent contractor or person otherwise excluded under s. 452.38, or a person employed in a managerial, executive, or commissioned sales capacity or in a capacity in which the person is privy to confidential matters involving the employer-employee relationship.

Wis. Stat. § 109.01(1r). The basic definition of the term "employee" ("any person employed by an employer") ensures that most individuals can recover unpaid wages from their employer under Chapter 109. But the exceptions from the basic definition indicate that the state legislature meant to exclude certain types of employees from Chapter 109's scope.

The exception at issue in this case is "a person employed in a managerial, executive, or commissioned sales capacity," and the term "executive" is key. The common meaning of "executive" in this context is a person who holds a position of senior managerial responsibility in a business. *See* Webster's Third New Int'l Dictionary 794 (1981); The New Oxford Am. Dictionary 590 (2d ed. 2005). Mandeville was vice president of Clinity; the title of his position alone indicates that he held a senior position within the company. In his role as vice president, Mandeville reported directly to Palermo, Clinity's chief executive officer. Dkt. 26, Ex. 1, at 1;

*see also* Dkt. 69, Ex. 8 (Clinity organizational chart).[1] He also supervised Clinity employees. *See* Dkt. 76, ¶ 10. Mandeville was employed in an executive capacity at Clinity, so he is not an "employee" for purposes of Chapter 109.

Even if Mandeville was not an "executive," he was employed in a "commissioned sales capacity." In one of his declarations, Mandeville admits that he spent over 80 percent of his time recruiting health care organizations to Clinity and placing health care providers with Clinity's clients. Dkt. 55, ¶ 2 ("[O]ver 80% of my time was spent on recruiting and sales."). Mandeville received commissions for each organization or provider that he recruited or placed. *See* Dkt. 26, Ex. 1, at 1–2. That's all to say that Mandeville does not fall within Chapter 109's scope no matter how you slice it.

Mandeville resists this conclusion. He points to a 2003 policy statement from the state's Labor Standards Bureau, which provides definitions for the statutory phrase "a person employed in a managerial, executive, or commissioned sales capacity." Dkt. 74, Ex. 1. As relevant here, the policy statement defines a person employed in an executive capacity as "someone who is truly a high-level official in an organization, whether or not she is a manager" and explains that "[a]mong these are the Vice Presidents of large organizations who are truly in 'upper management.'" *Id.* at 2. The policy statement also defines a person employed in a commissioned sales capacity as "employees who are (1) salespersons (2) paid primarily by commission." *Id.* According to the policy statement, "[t]o be a salesperson, the employee must spend 100% of his time in sales." *Id.*

---

[1] Citations to filings from the docket use the page numbers assigned by the court's electronic filing system, not the page numbers in the original document.

But Wisconsin courts no longer defer to an administrative agency's interpretation of statutory language. *See Tetra Tech EC, Inc. v. Wis. Dep't of Revenue*, 2018 WI 75, ¶ 108, 382 Wis. 2d 496, 914 N.W.2d 21; see Wis. Stat. § 227.57(11) (state courts "shall accord no deference to the agency's interpretation of law"). Consequently, the Labor Standards Bureau's definitions for the statutory phrase "a person employed in a managerial, executive, or commissioned sales capacity" do not bind Wisconsin courts. Rather than defer to the Labor Standards Bureau's definitions, Wisconsin courts would consider the issue de novo applying traditional statutory interpretation principles. *Radtke v. Lab. & Indus. Rev. Comm'n*, 2025 WI App 14, ¶ 18, 415 Wis. 2d 347, 18 N.W.3d 187. That's the approach the court took here.

In any event, Mandeville would fall under the definition of "executive" in the Labor Standards Bureau's policy statement. He was vice president of Clinity, a high-level position in the company. And he served as a manager, even if his job was mostly dedicated to sales.

Mandeville is not an "employee" for purposes of Chapter 109. The court will enter judgment and close this case.

## ORDER

IT IS ORDERED that: the clerk of court is directed to enter judgment accordingly and close this case.

Entered June 12, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

4